O

# United States District Court
# Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>$169,740.00 IN U.S. CURRENCY AND $194,840.00 IN U.S. CURRENCY,<br><br>  Defendants. | Case No. 2:15-cv-02683-ODW(ARGx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [17]** |

## I.   INTRODUCTION

Plaintiff United States of America is seeking Declaratory Relief against Defendants Daniel Soto, Colette Park, Hong Natasha Sun, Gurdeep Singh and Julio Soto Perez for currency collected during the investigation of a Middle Eastern drug trafficking organization ("DTO").  For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Default Judgment (ECF No. 17.) and enters a declaratory judgment.[1]

/ / /

/ / /

---

[1] After carefully considering the papers filed in support of the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

## II.  FACTUAL BACKGROUND

Since approximately April 2014, Drug Enforcement Administration ("DEA") agents have been investigating a Middle Eastern DTO operating from India, Canada, Mexico and Southern California. (ECF No. 1, "Compl." ¶ 8.) The Middle Eastern DTO receives shipments of narcotics from a DTO located in Mexico. (*Id.*) The shipments of narcotics are transported from Mexico through the United States and eventually into Canada. (*Id.*) Agents identified Singh as a narcotics proceeds courier for the Middle Eastern DTO, whereby he and other couriers receive instructions from the Middle Eastern DTO leaders to collect and deliver narcotics proceeds to the Mexican DTO couriers. (*Id.*)

During the investigation, agents learned that Singh and others would meet at the Sikh Gurdwara Temple parking lot located at 7640 Lankershim Boulevard, North Hollywood, California (the "Temple parking lot") to drop off and pick up narcotics proceeds. (Compl. ¶ 9.) Pursuant to state wiretap orders, agents intercepted several telephone calls between Singh and others regarding narcotics and narcotics proceeds transactions. (Compl. ¶ 10.) On September 19, 2014, at approximately 4:12 p.m., Singh received a call from Raja, who has been identified as a member of the Middle Eastern DTO. (*Id.*) During the conversation, Raja instructed Singh to drop "1.75," believed to be $175,000 in narcotics proceeds, to an individual whom Raja identified as Mario on September 20, 2014. (*Id.*) Mario is believed to be a Mexico DTO courier. (*Id.*)

On September 20, 2014, at approximately 7:30 a.m., agents established surveillance at Singh's Los Angeles, California residence. (Compl. ¶ 11.) During the surveillance, agents observed Singh depart from the residence in a white Toyota Sienna van, bearing a California license plate. (*Id.*) Agents followed the Toyota Sienna and observed Singh conduct money pick-ups in Bakersfield, California before returning to Singh's residence. (*Id.*)

At approximately 4:30 p.m., Singh called Raja and stated that he (Singh) was

2

going to drop off the narcotics proceeds. (Compl. ¶ 12.) At approximately 5:30 p.m., Singh and two unidentified females departed from Singh's residence in the Toyota Sienna. (*Id*.) Singh drove the Toyota Sienna to the Temple parking lot and parked. (*Id*.) At approximately 6:00 p.m., Soto and Park arrived at the Temple parking lot in a Chevrolet Camaro. (Compl. ¶ 13.) Singh then drove the Toyota Sienna towards the rear of the Temple parking lot while the Camaro drove to the same location. (*Id*.) Singh provided a black plastic bag to Soto and then drove the Toyota Sienna away from Sikh Gurdwara Temple while Soto drove the Camaro out of the Temple parking lot. (*Id*.) At approximately 6:10 p.m., Singh called Raja and told Raja that the exchange had been completed. (*Id*.)

Agents followed the Camaro to a nearby gas station where Soto and Park changed seats. (Compl. ¶ 14.) When agents approached the Camaro, agents observed on the Camaro's floorboard in plain view a black plastic bag containing a large amount of U.S. currency. (*Id*.) Soto told the agents the U.S. currency was not his, that he had more in the Los Angeles residence, and he was instructed by an unidentified individual to pick up the narcotics proceeds. (Compl. ¶ 15.)

Agents executed a search warrant for the Camaro and the Los Angeles residence and found $194,840.00 in stacked and rubber-banded U.S. currency inside a black plastic bag on the Camaro's floorboard. (Compl. ¶ 16.) When agents executed the search warrant at the Los Angeles residence, they found $169,740.00 in additional U.S. currency inside a hallway closet. (*Id*.)

The Complaint was filed on April 10, 2015. (ECF No. 1.) Defendants were served with the Summons and Complaint on April 16, 2015. (ECF No. 17, Attach. 1 Decl. of Katherine Schonbachler ["Schonbachler Decl."], Exs. C-N.) Plaintiff requested entry of default on August 3, 2015. (*Id*. ¶ 17.) The Clerk entered the default of Defendants on August 4, 2015, and a copy of the Default by Clerk was served on Defendants by mail on August 20, 2015. (*Id*., Ex, O.) Defendants are neither minors nor incompetent persons and the Service Members Civil Relief Act

does not apply. (*Id.* ¶ 21.) Plaintiff now moves for default judgment. (ECF No. 17.)

### III. LEGAL STANDARD

FRCP 55(b) authorizes a district court to grant default judgment after the Clerk enters default under Rule 55(a). Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice.

A district court has discretion whether to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

In exercising its discretion, a court must consider several factors (the "*Eitel* Factors"), including: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

The federal Declaratory Judgment Act provides that district courts "may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither

of these results can be accomplished, the court should decline to render the declaration prayed. *McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir. 1966) (citation omitted).

## IV. DISCUSSION

All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance shall be subject to forfeiture to the United Stated and no property right shall exist to them. 21 U.S.C. § 881(a)(6).

### A. Service

The Court finds that service of the Summons and Complaint upon Defendants was proper, as each Defendant was served twice by certified mail to their last known address. (Schonbachler Decl., Exs. C-N.) All other requirements of Local Rule 55-1 have been met and are not in controversy.

### B. *Eitel* Factors

The Court finds that the *Eitel* factors weigh in favor of default judgment. The Court will discuss each factor in turn.

#### 1. Plaintiff Would Suffer Prejudice

If default judgment is not entered against Defendants, Plaintiff may be left with no recourse against Defendants and its efforts to collect monies owed will be severely prejudiced. *PepsiCo, Inc. v. Cal. Sec. Cans,* 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Because Plaintiff will suffer prejudice if he is without recourse, this factor favors entry of default judgment.

#### 2. Plaintiff Has Brought Meritorious Claims and the Complaint is Sufficient

The merits of the claim and the sufficiency of the Complaint weigh in favor of default judgment. The Complaint sufficiently states a plausible claim for relief by alleging with sufficient particularity facts of Defendants' DTO and the amount of money collected by government agents. Further, the evidence submitted to the Court

through the Declarations of Schonbachler and the supporting exhibits establish the merit of the claims against Defendants and the amount of damages.

### 3. The Amount at Stake Weighs in Favor of Default Judgment

Under the fourth *Eitel* factor, the Court considers the amount of money at issue in relation to a defendant's conduct. In the case at hand, the total amount comes to $364,580 as of April 10, 2015. (Schonbachler Decl. ¶ 2.) The currency represents or is traceable to proceeds of illegal narcotic trafficking or was intended to be used in one or more exchanges for a controlled substance or listed chemical, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). (Compl. ¶ 19.) The sum of money is reasonably proportionate to the harm caused by the conduct of the defaulting defendants and is properly documented by Plaintiff. *Gen. Emp. Trust Fund v. Victory Bldg. Maint., Inc.,* 2007 U.S. Dist. LEXIS 35600, at *12 (N.D. Cal. April 11, 2007); *Cotton v. Zitterman Bosh & Assoc.*, 2012 WL 3289921, at *1 (D. Arizona Aug. 13, 2012). As such, the Court finds that the amount at stake weighs in favor of default judgment.

### 4. There is No Possibility of Dispute as to Material Facts

The next *Eitel* factor considers the possibility that material facts are disputed. *PepsiCo*, 238 F. Supp. 2d at 1177; *Eitel*, 782 F.2d at 1471 – 72. Defendants have not filed a responsive pleading or otherwise denied the allegations of the Complaint, so a dispute concerning the material facts is not likely. Since the Clerk has already entered the default of Defendants, the well-pleaded factual allegations of the Complaint are deemed correct, except for those pertaining to damages. Further, the evidence submitted by Plaintiff supports its account of the events giving rise to the claim. The slight possibility of a dispute of material facts favors default judgment. *Truong Giang Corp. v. Twinstar Tea Corp.,* 2007 WL 1545173, at *12 (N.D. Cal. May, 29 2007).

### 5. There is Little Possibility Default was Due to Excusable Neglect

Defendants have been properly served with the Summons and Complaint and have failed to answer or otherwise respond. They have also been served with the

Request for Entry of Default and the Default by Clerk. (Schonbachler Decl., Ex. O.) Defendants have had adequate opportunity to challenge the claims. Given the service of the Summons and Complaint and the notice provided to them of the entry of default, the possibility of excusable neglect is remote.

### 6. Policy for Deciding on the Merits Weighs in Favor of Granting Default Judgment

In *Eitel*, the court maintained that "[c]ases should be decided upon their merits whenever reasonably possible." 782 F.2d at 1472. However, where, as is the case here, the defendant fails to answer the plaintiff's complaint, "a decision on the merits [is] impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177 ("Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."). Furthermore, "when a defendant . . . [knows] that he has been sued . . . [it is] the defendant who seeks to prevent an adjudication on the merits." *Carol Gilbert, Inc. v. Haller*, 179 Cal. App. 4th 852, 865 (Cal. Ct. App. 2009). Accordingly, this factor does not preclude default judgment.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's Motion for Default Judgment. (ECF No. 17.) Plaintiff is granted forfeiture of Defendants' currency in the amount of $364,548.00. A separate judgment will issue.

**IT IS SO ORDERED.**

October 29, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**